UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/25/2025_____

WILLIAM E.,[1]

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND**
**RECOMMENDATION**

24-CV-07186-AT-HJR

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable Analisa Torres, United States District Judge**:

      Plaintiff William E. ("Plaintiff") brings this action under 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Supplemental Security Income ("SSI") under Title XVI the Social Security Act (the "Act"). For the reasons described below, the undersigned **RECOMMENDS** that the Commissioner's final decision be **REMANDED** for further proceedings.

I.      **BACKGROUND**

      **A.**      **Procedural Background**

      Plaintiff applied for SSI on February 21, 2018, *see* Certified Administrative Record, ECF No. 8 (hereinafter, "R. __") 416–21, asserting disability since December 1, 2017, due to blindness and low vision, chronic lower back pain, episodic

---

[1] To preserve his privacy, the plaintiff is referred to by his first name and the first initial of his last name.

mood disorder, anti-social personality disorder, mild depressive disorder, verbal and auditory hallucination, right-hand fracture, closed fibular fracture of the right ankle, memory loss and post-traumatic stress disorder ("PTSD"), and "left rotatory cup [*sic*] injury." *Id*. at 463.

The Commissioner initially denied Plaintiff's application on August 23, 2018, *see id*. at 163, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 169–71. ALJ Paul Armstrong held a hearing on August 23, 2019 at which Plaintiff, accompanied by counsel, testified in person. *Id*. at 38–82. Vocational Expert ("VE") Suman Srinivasan testified by telephone. *Id*. at 40, 78–81. In a written decision dated September 5, 2019, ALJ Armstrong determined that Plaintiff was not disabled since February 21, 2018, the date the application was filed. *Id*. at 142. On review, the Appeals Council ("AC") vacated the ALJ's decision and remanded the case for a new hearing under 20 C.F.R. § 416.1477, specifying the need to resolve Plaintiff's mental impairment and noting several medical opinions that appeared inconsistent with the ALJ's findings. R. 157.

After remand, Plaintiff appeared before ALJ Angela Banks, accompanied by counsel, on July 26, 2023. *Id*. at 83. VE Edmond Caldera also testified. The record of this hearing was held open for fourteen days to allow for the submission of updated records. *Id*. at 89. By written decision dated October 3, 2023, the ALJ denied Plaintiff's application. *Id*. at 7. Plaintiff again sought review by the AC, which denied the request, thereby rendering the ALJ's decision the final

determination of the Commissioner.  *Id.* at 1.  This action followed, seeking judicial review under 42 U.S.C. § 405(g) and/or § 1383(c)(3).  ECF No. 1.

### B.     Medical Evidence

#### 1.     Evidence Related to Physical Health Conditions

Plaintiff began seeing Nurse Practitioner ("NP") Molly Holshousher at BrightPoint Health as his primary care provider in July 2018.  R. 723.  NP Houlshousher completed a Medical Source Statement on September 5, 2018, which diagnosed Plaintiff with chronic pain at multiple sites, including his low back, right ankle, and left arm.  *Id.* at 741.  She concluded that Plaintiff would be absent more than three times a month because of his impairments.  *Id.* at 746.  Plaintiff continued to meet with NP Holshousher until May 2019, when he was transferred to another clinician in the practice.  *Id.* at 753.  In February 2022, Plaintiff reported joint pain, although there was no joint tenderness or swelling upon examination. *Id.* at 1721. Plaintiff continued to receive care at the clinic through January 31, 2023.  *Id.* at 1702.

Dr. Allen Meisel performed a consultative orthopedic examination in August 2018.  *Id.* at 691.  He diagnosed Plaintiff with lumbar back pain secondary to herniated disc disease and right ankle pain following a fracture.  *Id.*  His report included imaging that showed a normal right ankle and an unremarkable lumbar spine, apart from spina bifida occulta.[2]  *Id.* at 692–93.  Plaintiff's weight was recorded as 211 pounds.  *Id.* at 690.

---

[2] "Spina bifida occulta, or hidden spina bifida, is a mild form of spina bifida . . . [that] rarely causes symptoms, and most people diagnosed with the

On September 16, 2019, Plaintiff was treated in the BronxCare Health System Emergency Room for asthma. *Id.* at 920. His chest x-ray indicated that he had asthma, but no acute pulmonary pathology. *Id.* at 925.

Plaintiff's treating records include a left knee x-ray in December 2019, which was normal. *Id.* at 835. His weight was reported as 208 pounds. *Id.* He had a normal physical examination on February 6, 2020, showing a full range of motion and no joint tenderness or swelling. *Id.* at 829. Plaintiff received x-rays of his lungs and chest on October 10, 2021 after presenting for exacerbation of his asthma. *Id.* at 1164. The results were within normal limits. *Id.* at 1166. His weight was reported as 99.8 kilograms, or approximately 220 pounds. *Id.* at 1160.

### 2. Evidence Related to Mental Health Conditions

On February 24, 2018, Plaintiff was admitted to Staten Island University Hospital after a suicide attempt. *Id.* at 681. He was discharged on March 2, 2018. *Id.* at 665.

On August 14, 2018, Dr. John Nikkah conducted a psychiatric consultative examination. *Id.* at 681–87. Dr. Nikkah noted that Plaintiff was unable to provide the exact duration or mode of his prior treatment, but said he had been placed on antipsychotic medication and mood stabilizers during his incarceration. *Id.* at 681. Plaintiff experienced "hyperstartle [*sic*] responses and hypervigilance when confronted with authority figures," as well as nightmares most nights of the week.

---

condition don't know they have it." *See* *https://my.clevelandclinic.org/health/diseases/22825-spina-bifida-occulta* (last visited June 30, 2025).

*Id.* at 682.  Plaintiff's mental status examination indicated moderate impairment to attention and concentration due to distractibility.  *Id.* at 684.  Dr. Nikkah also found that Plaintiff was "markedly limited in his ability to sustain an ordinary routine at work . . . caused by a combination of fatigue, distractibility, a lack of motivation, psychotic symptoms, and substance abuse problems."  *Id.* at 686.  He diagnosed Plaintiff with bipolar disorder with psychotic features, PTSD, and cannabis use disorder.  *Id.*

Also in August 2018, psychiatric consultant Dr. O. Fassler, PhD completed a Mental Residual Functional Capacity ("MRFC") assessment.  *Id.* at 133.  Dr. Fassler noted that Plaintiff presented with expansive mood and was distractible.  *Id.* at 131. He found Plaintiff was moderately limited in his ability to sustain an ordinary routine without special supervision, and moderately limited in his "ability to complete a normal workday and workweek without interruptions" from the reported psychological symptoms.  *Id.* at 134.  Dr. Fassler also reported that Plaintiff could respond "appropriately to supervision, coworkers, and work situations."  *Id.* at 135.

Plaintiff began treatment with psychiatric NP Patrick Tigenoah at BrightPoint Health in August 2018.  *Id.* at 701, 809.  On August 2, 2018, NP Tigenoah completed an initial psychiatric assessment, noting that Plaintiff reported suicidal ideation and was considered high risk.  *Id.* at 702.  On September 19, 2018, NP Tigenoah submitted a medical source statement reporting that Plaintiff suffered from bipolar disorder and PTSD.  *Id.* at 747.  He indicated that Plaintiff suffered from constant deficiencies in concentration, persistence, or pace, including an

extreme loss in his ability to maintain regular attendance and to be punctual and to sustain an ordinary routine without special supervision. *Id.* at 749–50. NP Tigenoah anticipated that Plaintiff would be absent more than three times per month because of his impairments. *Id.* at 748. In October 2018, NP Tigenoah reported that Plaintiff expressed active suicidal ideation during a medication management appointment. *Id.* at 772. Plaintiff reported the same symptoms in November 2018. *Id.* at 767.

Plaintiff received emergency psychiatric care on March 8, 2019. *Id.* at 793. He was not admitted but remained under observation overnight. *Id.* at 789. He met with NP Tigenoah several days later, on March 13, 2019. *Id.* at 762. NP Tigenoah noted that Plaintiff denied suicidal ideations and hallucinations. *Id.* at 763. On June 10, 2019, another clinician at BrightPoint Health noted that Plaintiff had stopped taking his medication and was a "bit antsy and distractable [*sic*]." *Id.* at 751. Plaintiff denied experiencing suicidal ideation and hallucinations during a medication management appointment with NP Tigenoah in June of 2020. *Id.* at 809.

Plaintiff was treated at BronxCare Emergency Room for suicidal ideation on March 18, 2021. *Id.* at 997. He also reported experiencing auditory hallucinations. *Id.* Plaintiff was agitated and violent during his admission and required restraints. *Id.* at 1038. He was discharged on March 22, 2021. *Id.* at 1144.

Plaintiff reported experiencing auditory hallucinations and suicidal ideation on November 4, 2021. *Id.* at 2476–77. On June 26, 2023, Plaintiff reported

symptoms of depression, including feeling "down, depressed or hopeless" nearly every day. *Id.* at 2055. He said that these problems made it "very difficult" to "do [his] work, take care of things at home or get along with other people." *Id.*

## C.    Hearings

### 1. August 23, 2019 Hearing Before ALJ Armstrong

On August 23, 2019, ALJ Armstrong held a hearing during which Plaintiff testified that he suffered from nerve damage to his left forearm as a teenager. *Id.* at 48. This made it difficult to carry heavy objects for more than two or three minutes. *Id.* at 29. Plaintiff testified that he experienced pain in his back and right ankle, *id.* at 49–50, and that his physical impairments precluded him from engaging in physical labor. *Id.* at 47. However, he also said he could carry sixty to seventy pounds up five flights of stairs. *Id.* at 62–63.

Plaintiff testified to suffering from psychiatric problems, including depression, PTSD, and schizophrenia, which he attributed to an eleven-year period of solitary confinement during his incarceration. *Id.* at 67. He described experiencing auditory and visual hallucinations and claimed that his PTSD made it difficult to follow instructions and adhere to authority. *Id.* at 73, 55. These impairments prevented Plaintiff from maintaining employment because he could not complete his assigned work. *Id.* at 57.

Both ALJ Armstrong and Plaintiff's counsel examined VE Srinivasan, who testified that a hypothetical person, limited to simple, unskilled labor with light limitations on handling and fingering and no public contact, could serve as a merchandise worker. *Id.* at 79. The VE testified, however, that missing one day or

more each month because of psychosocial difficulties would be work preclusive.  *Id.*
at 80.  The VE further testified that it would be difficult to maintain work if there
were extreme limitations in accepting instructions and maintaining socially
appropriate behavior.  *Id.*

### 2.    July 26, 2023 Hearing Before ALJ Banks

On July 26, 2023, ALJ Banks held a hearing after remand from the AC.
Plaintiff testified that he suffered from PTSD related to his incarceration and
experienced auditory hallucinations four or five times per week, sometimes
accompanied by visual hallucinations, which he described as distressing and
distracting.  *Id.* at 91–92.  Plaintiff further claimed he had difficulties with
concentration and task completion.  *Id.* at 92.  While struggling with simple tasks
such as laundry, he did not experience difficulties bathing or feeding himself.  *Id.* at
94.

Both ALJ Banks and Plaintiff's counsel examined VE Calandra.  The VE
testified that a hypothetical person, with limitations balancing on uneven terrain,
and the capacity to occasionally interact with supervisors and the public, could work
as a maid, package sorter, and cafeteria worker.  *Id.* at 96.  The VE testified that
time off-task in excess of ten percent and unplanned absences exceeding eight hours
per month would be work preclusive.  *Id.* at 98.

### D.    The ALJ's Decision

On October 3, 2023, ALJ Banks issued her decision.  After conducting the
five-step sequential analysis outlined in 20 C.F.R. § 416.920(a), the ALJ found that
Plaintiff was not disabled under Section 1614(a)(3)(A) of the Act.  R. 21.

At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2018, the application date. *Id.* at 13. At step two, the ALJ found that Plaintiff had six severe medically determinable impairments: degenerative joint disease, degenerative disc disease, an anxiety disorder, a personality disorder, schizoaffective disorder, and PTSD. *Id.*

At step three, ALJ Banks found that Plaintiff's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). *Id.* She first considered Plaintiff's physical impairments, finding no documented need for or reliance on a mobility aid or inability to use one upper extremity to independently complete work-related activities involving fine and gross motor skills as required by Listings 1.15 (skeletal disorder compromising nerve root) and 1.18 (abnormality of a major joint). *Id.* at 13. The ALJ additionally found that the requirements for Listing 3.03 (asthma) were not met because Plaintiff's records indicated that his asthma was controlled by medication and respiratory exams were normal. *Id.* at 14.

The ALJ next considered whether Plaintiff's mental impairments satisfied the paragraph B criteria for Listings 12.04 (bipolar disorder), 12.06 (anxiety disorder), 12.08 (personality- and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). To satisfy these criteria, the impairments must result in one "extreme" limitation or two "marked" limitations in any of the following four functional areas: (1) ability to understand, remember or apply

information; (2) ability to interact with others; (3) ability to concentrate, persist or maintain pace; and (4) ability to adapt or manage oneself.  20 C.F.R. § 404.1520(a).

The ALJ found that Plaintiff experienced moderate limitations in each of the first three categories.  As to category one—understanding, remembering or applying information—the ALJ noted Plaintiff's testimony about past special education coursework, and that he was able to perform simple calculations during a consultative examination.  R. 14.  As to the second area—interacting with others— the ALJ referenced Plaintiff's testimony regarding his limited number of social activities but noted that he also testified to spending time with his family and girlfriend.  *Id.*  The ALJ also pointed to Plaintiff's treating records from November 2020, when Plaintiff said he was "doing well and helping his friend refurbish his bar establishment."  *Id.*  As to the third area—ability to concentrate, persist or maintain pace—the ALJ recognized that Plaintiff reported getting easily distracted, and that a 2018 consultative exam showed moderate impairment.  *Id.* at 15.  The ALJ also referenced Plaintiff's ability to follow the hearing and recent treating records indicating good concentration.  *Id.*

The ALJ found that Plaintiff experienced mild limitations in adapting and managing himself, referring to Plaintiff's testimony regarding personal care tasks, including preparing simple meals and paying bills, as well as treating records indicating that he "was doing well."  *Id.*

Having determined that Plaintiff's impairments did not meet any of the relevant Listings, the ALJ proceeded to assess Plaintiff's residual functional

capacity ("RFC").  20 C.F.R. § 416.920(e).  The ALJ determined that Plaintiff had the RFC to perform light work, with the following limitations: occasional balance on uneven terrain, stooping, crouching, and climbing stairs, occasional interaction with supervisors and coworkers, and occasional change in routine setting.  R. 19.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his described symptoms.  *Id.* at 16.  Plaintiff testified that he suffered from severe PTSD and was unable to work despite attempts to do so.  *Id.*  He said he experienced distractibility and hallucinations, and a pattern of leaving his workplace during a shift.  *Id.*  However, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms not entirely consistent with mental status examinations and admittance records, which generally showed stable moods and good concentration, and normal physical examinations between February 2020 and January 2023.  *Id.* at 16–18.

Additionally, the ALJ considered the persuasiveness of opinions from medical providers, noting that the state medical consultant and Plaintiff's consultative examiner's findings of non-severe or mild physical impairments were supported by testing and spinal imaging in the record.  *Id.* at 18.  The ALJ found unpersuasive an opinion regarding limitations in the ability to reach, handle and finger, and to lift more than ten pounds because it was not consistent with testing results and spinal imaging.  *Id.* at 19.

The ALJ found partially persuasive the state psychological consultant's finding of moderate limitations in all four paragraph B criteria. *Id.* at 18–19. But she determined that Dr. Fassler's finding of moderate deficiencies in adapting and managing himself was contradicted by Plaintiff's reports of daily living, and his testimony that his girlfriend "help[ed] him with laundry and cooking." *Id.* at 19.

The ALJ found unpersuasive Dr. Nikkah's opinion that Plaintiff was markedly limited in several paragraph B criteria, noting that its conclusion of marked limitations in his "ability to sustain an ordinary routine and regular attendance at work" was inconsistent with mental status examinations showing stable moods and good concentration. *Id.*

Additionally, the ALJ found NP Tigenoah's finding of "marked or extreme psychological limitations . . . contradicted by mental status examinations that showed stable moods and good concentration." *Id.*

At step four, the ALJ found that Plaintiff had no relevant past work experience. *Id.* She also noted that Plaintiff, born on December 8, 1980, was defined as a "younger individual,"[3] *see* 20 C.F.R. § 416.963, and had limited education, *see id.* § 416.964.

At step five, the ALJ found there were jobs that Plaintiff could perform existing in significant numbers, citing testimony by VE Calandra that someone with

---

[3] Age is treated as an "increasingly limiting factor" in an applicant's ability to adjust to other work. 20 C.F.R. § 416.963(a). When an applicant is under 50 years old, age is generally not considered. *Id.* § 416.963(c).

Plaintiff's age, education, work experience, and RFC could perform jobs such as maid, package sorter, and cafeteria worker.  R. 20.

## II.    Applicable Law

### A.    Standard of Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (cleaned up).  When "the ALJ has applied an improper legal standard," or when there is not substantial evidence to support the ALJ's determination, the reviewing court may remand to the ALJ. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

"Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  The Commissioner's findings as to any fact supported by substantial evidence are conclusive.  *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.") (cleaned up).

Thus, if sufficient evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d

443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." (cleaned up)). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded to the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (cleaned up).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (cleaned up). Courts review *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not determine whether the ALJ applied the correct legal principles in assessing plaintiff's eligibility for disability benefits); *Thomas v. Astrue*, 674 F. Supp. 2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration). A court may not defer to an ALJ's determination that is the product of legal error, including a failure to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." *Cullen v. Kijakazi*, No. 23-CV-1960, 2024 WL 564501, at *2 (S.D.N.Y. Feb. 9, 2024) (quoting 42 U.S.C. § 405(b)(1)), *adopted by* 2024 WL 1158455 (Mar. 18, 2024).

### B.    Standard Governing Evaluation of Disability Claims by the Agency

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id*. § 423(d)(3).

An ALJ must proceed through a five-step analysis to make a disability determination.  *See* 20 C.F.R. § 404.1520.  A claimant bears the burden of proof as to steps one through four; the Commissioner bears the burden as to step five. *Selian* 708 F.3d at 418.  "The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not progress to the next step."  *Martinez v. Comm'r of Soc. Sec.*, No. 18-CV-580, 2019 WL 1331399, at *2 (S.D.N.Y. Mar. 15, 2019).

First, the claimant must prove he is not currently engaged in substantial gainful activity.  Second, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the Listings.  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.  If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove—considering claimant's residual functional capacity, age,

education, and past work experience—that the claimant is capable of performing other work. If the Commissioner proves other work exists that the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.

### C.    Standard Governing Evaluation of Medical Opinion Evidence

In January 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520(c). Because Plaintiff applied for benefits in 2018, the new regulations apply here.

Under the new regulations, the ALJ considers all medical opinions and evaluates their persuasiveness based on their supportability, consistency, relationship with claimant, specialization, and other factors. *See id.* § 404.1520c(a)–(c). An ALJ is required to "articulate how [they] considered the medical opinions" and state "how persuasive" the medical opinions are determined to be, with a *specific explanation of the supportability and consistency factors. See id.* § 404.1520c(a)–(b) (emphasis added); *see Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion . . . .") (emphasis in original), *adopted sub nom. by Vellone ex. rel. Vellone v.* Saul, 2021 WL 2801138 (July 6, 2021).

"Supportability refers to the extent to which a medical source opinion is supported by objective medical evidence and the medical source's explanations."

20 C.F.R. § 404.1520c(c)(1).  Put simply, "[s]upportability is an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." *Vellone*, 2021 WL 319354, at *6.

Consistency, meanwhile, "refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources." 20 C.F.R. § 404.1520c(c)(2).  "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone*, 2021 WL 319354, at *6 (cleaned up).  An ALJ's analysis of the consistency factor is insufficient when the assessment "ignores or mischaracterized medical evidence or cherry-picks evidence that supports [the ALJ's] RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citing *Velasquez v. Kijakazi*, No. 19-CV-9303, 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021)).

## III.    DISCUSSION

Plaintiff challenges the ALJ's rulings on three grounds: (1) the ALJ erred by failing to include absenteeism in the discussion of Plaintiff's RFC; (2) the ALJ failed to properly consider all of Plaintiff's impairments and limitations; and (3) the VE testimony did not constitute substantial evidence.  ECF No. 15 at 21; ECF No. 19 at 1.  Each of these arguments is addressed in turn.

### A.    Errors in Addressing Absenteeism Warrant Remand

Plaintiff argues that he should have been found disabled based on medical opinions that Plaintiff would be absent from work or off-task, and VE testimony that such absences would be work preclusive.  ECF No. 16 at 23–25.  Medical

experts NP Tigenoah and NP Houlshousher both provided opinions that Plaintiff
would be absent more than three times per month because of his impairments.
R. 746, 748.  At both of Plaintiff's hearings, VEs testified that this level of absences
would be work preclusive.  *Id.* at 79, 98.  Despite this evidence in the record, the
ALJ did not include absenteeism as an element of Plaintiff's RFC.  Plaintiff
contends this is grounds for remand.

Where the issue of absenteeism is raised in the record "through persuasive
medical opinions or VE testimony" and the ALJ fails to incorporate it into the RFC,
"the ALJ has committed legal error, and substantial evidence cannot be said to
support a finding of no disability."  *Uht v. O'Malley*, No. 22-CV-2143, 2024 WL
1251176, at *6 (S.D.N.Y. Mar. 22, 2024); *see also Gallagher v. Astrue*, No. 10-CV-
8338, 2012 WL 987505, at *22 (S.D.N.Y. Mar. 22, 2012) ("The Court also finds [the
ALJ's] . . . conclusions at the fourth and fifth steps . . . to not be sufficiently and
clearly supported by the medical and vocational testimony."), *adopted by* 2012 WL
1339357 (Apr. 17, 2012); *Santos v. Kijakazi*, No. 21-CV-1682, 2022 WL 4354372, at
*9 (S.D.N.Y. Sept. 20, 2022) (the ALJ's decision must make clear how each medical
opinion "jibes" with VE testimony that absences would be work preclusive).

The Commissioner counters that the RFC was supported by substantial
evidence because the ALJ "properly declined to adopt these particular opinions."
ECF No. 16 at 9.[4]  The Commissioner further claims that Plaintiff's daily activities

---

[4] At page 24 of his brief, Plaintiff cites cases where the ALJ categorically failed to
consider absenteeism.  *See Devers v. Comm'r of Soc. Sec.*, No. 21-CV-5931, 2023 WL
2734431, at *12 (S.D.N.Y Mar. 31, 2023) (remanding because of an ALJ's failure to address
potential absenteeism); *Guzman v. Comm'r of Soc. Sec.*, No. 20-CV-07420, 2022 WL

constitute substantial evidence to support the RFC.  *Id.* at 9–10.  Thus, the key

questions are (1) whether the ALJ properly declined to adopt the medical opinions

on absenteeism, and (2) whether Plaintiff's daily activities are substantial evidence

to support the RFC, which did not include absenteeism

### 1. The ALJ Did Not Properly Analyze the Persuasiveness of NP Tigenoah's Medical Opinion

When considering medical opinions, the ALJ must explain how persuasive

she finds *each* medical opinion; the fact that the ALJ properly considered *some* of

the medical opinion evidence is not sufficient to show that the ALJ's conclusion was

supported by substantial evidence.  *See, e.g.*, *McIntosh v. Kijakazi*, No. 20-CV-7354,

2022 WL 2384151, at *1 (S.D.N.Y. July 1, 2022) ("The ALJ failed to properly explain

her evaluations of supportability and consistency for *each* of the medical sources.")

(emphasis added); *see also Ellen L. B. v. Kijakazi*, No. 22-CV-10, 2023 WL 2215990,

at *9 (D. Vt. Feb. 24, 2023) ("Because the ALJ failed to conduct the requisite

persuasiveness analysis for *each* medical source . . . remand is warranted.")

(emphasis added).

NP Tigenoah concluded that Plaintiff would be absent more than three times

per month.  R. 748.  The ALJ's entire analysis of this opinion consisted of the

following three sentences:

> Patrick Tigenoah NP-P found marked or extreme
> psychological limitations (Exhibit B16F).  This opinion is
> contradicted by mental status examinations that showed

---

2325908, *adopted by* 2022 WL 2316643 (June 28, 2022) (same).  Plaintiff's reliance on these
cases is misplaced because the ALJ did address absenteeism by rejecting the medical
opinions concluding that Plaintiff would miss work due to his disabilities.

> stable moods and good concentration (Exhibit B17F,
> pages 1, 3, 10, 15).  This opinion is contradicted by the
> claimants' self- report of feeling balanced on medication
> (Exhibit B13F, page 1).

*Id.* at 19.  As described below, this brief discussion is not an adequate analysis of

either the supportability or consistency of NP Tigenoah's medical opinions.

### a.    Supportability

The governing regulation requires that the ALJ explain what the medical

examiner "used to support their opinions and reach their ultimate conclusions."

*Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *14

(S.D.N.Y. Jan. 29, 2021), *adopted sub nom. by Cuevas v. Comm'r of Soc. Sec.*, 2022

WL 717612 (Mar. 10, 2022).  Only one of the records the ALJ cites with reference to

Tigenoah was authored by him, but it is dated October 25, 2018, *several months*

*after the medical opinion was completed.*  R. 769.  As a matter of logic, NP Tigenoah

could not have supported his conclusion using examinations that had not yet

happened.  Accordingly, the ALJ did not properly address the supportability of NP

Tigenoah's medical opinion.  *See, e.g., Ballantyne T. v. Comm'r of Soc. Sec.*, No.

23-CV-11182, 2025 WL 551820, at *9 (S.D.N.Y. Feb. 19, 2025) ("An ALJ's analysis

of supportability is insufficient if there is no specific explanation of how the medical

sources supported their own opinions.").

Instead of addressing supportability, the evidence cited above addressed only

the *consistency* of NP Tigenoah's opinion with the other medical evidence of record.

*Acosta Cuevas*, 2021 WL 363682, at *14 ("[T]he ALJ discussed some of the objective

medical evidence in the record in comparison to the CE's opinions to determine if

the evidence and opinions were consistent, which is what the consistency, not supportability factors, calls for.").  Here, the ALJ did not discuss the supportability of NP Tigenoah's opinion at all, which was legal error.

### b.  Consistency

While the ALJ did discuss the consistency of Tigenoah's opinion, her analysis of consistency erred.  The ALJ assessed NP Tigenoah's opinion based on four mental status reports, and one additional report regarding the efficacy of Plaintiff's medication.  R. 19.  Courts have "repeatedly" cautioned against relying on isolated mental status exams to draw conclusions about a patient's abilities.  *Bey v. Comm'r of Soc. Sec.*, No. 21-CV-7832, 2023 WL 1098183, at *9 (S.D.N.Y. Jan. 30, 2023); *see also Anderson v. Kijakazi*, No. 20-CV-06462, 2022 WL 938115, at *8 (S.D.N.Y. Mar. 3, 2022) (finding that the ALJ erred in relying on "mostly normal mental status examinations" to discount medical opinion when the interpretation was "far from obvious and . . . not supported by record"), *adopted* by 2022 WL 925070 (Mar. 29, 2022).  Such exams are insufficient because they "do not consider symptoms the patient may experience outside of that brief period of time."  *Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

It is especially improper for an ALJ to rely on "isolated, unremarkable examination findings" to discount an opinion when a claimant's reported symptoms are cyclical in nature.  *Nunez v. Comm'r of Soc. Sec.,* No. 22-CV-09100, 2024 WL 474045, at *23 (S.D.N.Y. Jan. 8, 2024), *adopted by* 2024 WL 262793 (Jan. 24, 2024).  Such is the case here, given the ALJ's determination that Plaintiff had a severe

impairment of schizoaffective disorder.  R. 13; *see Bey*, 2023 WL 1098183, at *10 (describing a Plaintiff's diagnosis of schizoaffective disorder as "episodic in nature").

Further, the ALJ found NP Tigenoah's opinion was not consistent based on findings from a four-month span, from February to June of 2019.  R. 751, 753, 760, 765.  However, the relevant period began on December 1, 2017, *see id.* at 10, and remained open until August 9, 2023, fourteen days after the hearing.  *Id.* at 89. "[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (cleaned up); *see Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10 (2d Cir. 2020) (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Marcano v. Comm'r of Soc. Sec.*, No. 20-CV-4230, 2021 WL 5315703, at *20 (S.D.N.Y. Nov. 16, 2021) (finding that the ALJ erred by "selectively rel[ying] on occasions when [the patient] had 'normal mental status exams' as a reason to afford little weight" to medical opinions), *adopted by* 2022 WL 253083 (Jan. 26, 2022).  Plaintiff reported hallucinations and suicidal ideation after these status exams.  *See* R. 997, 2476–77.

### 2.   Plaintiff's Daily Activities Do Not Provide Substantial Evidence to Support the RFC

The Commissioner argues that evidence of Plaintiff's daily activities supports the ALJ's conclusion that Plaintiff does not suffer from marked limitations in his ability to "sustain an ordinary routine and regular attendance at work."  ECF No. 18 at 9–10.  In particular, the Commissioner cites Plaintiff's testimony that he uses

public transportation, goes shopping, and handles his finances. *Id.* However, "in cases of mental disorders, an ability to function in one environment does not necessarily translate to an ability to function in a work environment." *Pipscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016). This is doubly true in cases where a plaintiff may struggle to maintain regular attendance. *See Claudio-Montanez v. Kijakazi*, No. 21-CV-2027, 2022 WL 17819123, at *6 (2d Cir. Dec. 20, 2022) ("[W]e have repeatedly recognized that engaging in basic activities necessary to one's welfare is markedly different from working full-time."). Plaintiff's ability to attend to his "personal needs does not amount to substantial evidence that he can maintain regular attendance at work." *Bellini v. O'Malley*, No. 22-CV-9639, 2024 WL 1328383, at *8 (S.D.N.Y. Mar. 28, 2024) (citing *Januchowski v. Comm'r of Soc. Sec.*, No. 18-CV-458, 2019 WL 13219360, at *7 (W.D.N.Y. Aug. 21, 2019)).

Moreover, the cases the Commissioner cites are inapposite. In both, the ALJ's assessments were supported by substantial evidence beyond Plaintiff's daily activities. In *Seth Adam P. v. Comm'r of Soc. Sec.*, in addition to citing evidence of daily activities, the ALJ included an "appropriate consideration of the medical opinion evidence." No. 24-CV-02684, 2025 WL 936929, at *8 (S.D.N.Y. Mar. 27, 2025). And in *Riaz v. Comm'r of Soc. Sec.*, the ALJ rejected the conclusion that the plaintiff could not interact appropriately with the public because it was not supported by medical opinions, treating records, *or* her reported ability to shop in stores and attend appointments. No. 20-CV-8418, 2022 WL 6564018, at *14–15

(S.D.N.Y. Aug. 5, 2022), *adopted by* 2022 WL 4482297 (Sept. 27, 2022).  These cases are distinguishable because the ALJ here erred in analyzing the medical opinions.

*      *      *

The errors described above are not harmless because the Court cannot "trace the path of [the] adjudicator's reasoning" in finding NP Tigenoah's opinion not persuasive.  *Capezza v. O'Malley*, No. 23-CV-01813, 2024 WL 642961, at *9 (S.D.N.Y. Feb. 15, 2024) (cleaned up).  And if the ALJ had found persuasive NP Tigenoah's opinion that Plaintiff would be absent more than three days per month, such a finding would render Plaintiff unable to obtain any of the jobs identified by the VEs.  R. 80, 98.  Accordingly, this action should be remanded for further proceedings so that the ALJ can assess the persuasiveness of medical opinions in the record in accordance with the revised regulations.  *See, e.g.*, *Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 622 (S.D.N.Y. June 6, 2022) (remanding so that ALJ can "separately discuss supportability and consistency"); *see, e.g.*, *Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiner's opinions"), *adopted by* 2021 WL 134945 (Jan. 14, 2021); *see, e.g.*, *Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942, 2020 WL 5848776, at *6–7 (N.D.N.Y. Oct. 1, 2020) (remanding due to ALJ's failure to adequately explain the supportability or consistency factors that led her to her decision).

### B.    The ALJ Did Not Fail to Consider All Impairments

Plaintiff also argues that the ALJ failed to consider all his impairments, specifically: obesity, asthma, sleep apnea, and bipolar disorder.  ECF No. 16 at 28.  These arguments are unavailing for reasons described below.

First, in this Circuit, "[o]besity is not in and of itself a disability . . . [and] an ALJ's failure to explicitly address a claimant's obesity does not warrant remand." *Hubbard v. Kijakazi*, No. 23-CV-883, 2023 WL 8615788, at *11 (S.D.N.Y. Dec. 13, 2023) (cleaned up).  "When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examination, a claimant's obesity is understood to have been factored into his decision." *Id.* (citing *Guadalupe v. Barnhart*, 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005)).  The ALJ "implicitly" factored obesity in by "relying on medical reports that repeatedly noted [his] obesity." *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011).  For example, the ALJ found that Plaintiff had "nonsevere [*sic*] physical impairments or mild physical limitations in standing, walking, climbing stairs, and kneeling[.]" R. 18.  She cited Dr. Meisel's orthopedic examination, which listed Plaintiff's weight as 211 pounds without shoes.  *Id.* at 690.  The ALJ found this opinion further supported by "testing in the record that showed full strength and normal walking." *Id.* at 18.  The testing report listed Plaintiff's weight as 205 pounds.  *Id.* at 652.

Second, Plaintiff's argument that the ALJ failed to consider asthma, *see* ECF No. 16 at 26, is unsupported by the record.  The ALJ found that the Listing for asthma was not met because Plaintiff's "treating medical records indicate that [it] is controlled with medication and the claimant has had . . . normal respiratory

examinations." R. 14. The ALJ cited medical records indicating that Plaintiff's asthma is "well controlled." *Id.* at 816. This is "'more than a mere scintilla[]'" of evidence, and thus it supports the ALJ's finding. *Halloran*, 362 F.3d at 31 (quoting *Richardson*, 402 U.S. at 401). As such, the ALJ did not err in her discussion of asthma.

Nor did the ALJ err in failing to consider sleep apnea as an impairment. Plaintiff did not mention sleep apnea in his initial application, *see* R. 416, or in either of his hearings. *See generally id.* at 38–99. No error occurs when an ALJ fails to identify a severe impairment that a plaintiff did not mention either when applying for benefits or during the administrative hearing. *Roane v. O'Malley*, 22-CV-10704, 2024 WL 1357845, at *6 (S.D.N.Y. Mar. 29, 2024).

Finally, Plaintiff argues that the ALJ "erred in failing to evaluate plaintiff's mental impairment of bipolar disorder." ECF No. 16 at 29. But the ALJ did discuss Plaintiff's symptoms of his mood disorder. For example, Plaintiff cites Dr. Nikkah's opinion, *see id.* at 28, which included diagnoses of bipolar disorder with psychotic symptoms, and PTSD. R. 681–84. In the RFC determination, the ALJ noted that Plaintiff experiences symptoms of PTSD related to his incarceration, and "gets frightened by the voices" he hears. *Id.* at 16. An ALJ's failure to explicitly acknowledge or consider non-severe impairments in an RFC analysis is harmless "if the ALJ ultimately considered the impairment within the RFC determination." *Dixon v. Berryhill*, No. 17-CV-00334, 2017 WL 3172849, at *12 n.29 (S.D.N.Y. July 26, 2017) (collecting cases). Such is the case here.

For these reasons, Plaintiff's separate argument that the ALJ did not consider all his impairments and limitations fails.

### C.    The VE's Testimony Is Not Substantial Evidence

Finally, Plaintiff argues that the VE testimony did not constitute substantial evidence.  ECF No. 16 at 28.  Where the hypothetical posed to the VE is "based on the ALJ's RFC finding, and the RFC finding is supported by substantial evidence, the hypothetical is proper and the ALJ may rely on the VE's testimony." *Pinckney v. Berryhill*, No. 17-CV-8184, 2019 WL 1434456, at *10 (S.D.N.Y. Mar. 29, 2019) (citing *McIntyre v. Colvin,* 158 F.3d 146, 151 (2d Cir. 2014)).  Here, the ALJ's hypothetical to the VE mirrored the RFC, but that RFC was not properly supported by substantial evidence, as described above.  In these circumstances where the RFC is not supported by substantial evidence, the ALJ cannot rely on the VE's response.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that this action be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays from service of this Report and Recommendation to file any objections.  *See* Fed. R. Civ. P. 6(a), (b), (d).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the

Honorable Analisa Torres, United States Courthouse, 500 Pearl Street, New York, New York 10007-1312. Any requests for an extension of time for filing objections must be directed to Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 25, 2025
      New York, New York

 

_____
Henry J. Ricardo
United States Magistrate Judge